IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KERRY BRINKLEY,                          §
                                         §
              Plaintiff,                 §
                                         §
V.                                       §          No. 3:18-cv-383-G-BN
                                         §
PENNYMAC LOAN SERVICES, LLC,             §
                                         §
              Defendants.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from United

States District Judge A. Joe Fish. *See* Dkt. No. 4.

After Plaintiff Kerry Brinkley filed an Original Petition and Application for

Temporary Restraining Order in County Court at Law No. 2 of Dallas County,

Defendant PennyMac Loan Services, LLC timely removed the case to this court, *see*

Dkt. No. 1, and filed a Motion for Summary Judgment [Dkt. No. 12]. Plaintiff filed a

response [Dkt. No. 16], and Defendant filed a timely reply [Dkt. No 18].

This action turns on the attempted foreclosure proceedings of Plaintiff's real

property. Defendant PennyMac Loan Services, LLC argues that it is entitled to

summary judgment on Plaintiff's claims for violations of the Texas Property Code and

the Texas Debt Collection Act as well as Plaintiff's breach of contract claim. The

undersigned agrees and recommends that the Court grant Defendant's Motion for

Summary Judgment [Dkt. No. 12].

## Background

In exchange for a loan to purchase real property, Plaintiff and Chachita Brinkley executed a Note on November 24, 2015, in favor of the lender Geneva Financial, LLC, promising to repay the principal amount of $346,750.00, plus interest. *See* Dkt. No. 14, Ex. A-1 at App. 7-9. To secure the repayment of the Note, the Brinkleys executed a Deed of Trust naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the security instrument. *See* Dkt. No. 14, Ex. A-1 at App. 90-103. Two undated allonges were later affixed to the Note – one that Geneva Financial, LLC indorsed to Defendant, *see* Dkt. No. 14, Ex. A-1 at App. 10, and one that was a blank indorsement that Defendant executed, *see* Dkt. No. 14, Ex. A-1 at App. 11.

On December 17, 2015, Defendant mailed Plaintiff two notifications, advising him that Geneva Financial, LLC had sold the mortgage loan to Defendant, *see* Dkt. No. 14, Ex. A-2 at App. 13-14, and that, from February 1, 2016, onward, Plaintiff was instructed to make payment to Defendant, *see* Dkt. No. 14, Ex. A-3 at App. 16-21. Plaintiff made monthly payments on the mortgage from February 2016 up to, and including, July 2017. *See* Dkt. No. 14, Ex. A-4 at App. 23-33.

On September 21, 2017, Defendant sent Plaintiff a Notice of Default and Intent to Accelerate via certified mail, informing Plaintiff of his outstanding August and September payments, as well as additional escrow balances and fees for a total amount of $6,400.50. *See* Dkt. No. 14, Ex. A-5 at App. 33-38. Plaintiff admitted to having received the notice. *See* Dkt. No. 14, Ex. C-1 at App. 81. The notice warned Plaintiff

2

that if Defendant did not receive a payment by October 26, 2017, it would "take steps to terminate [Plaintiff's] ownership in the property by a foreclosure proceeding or other action to seize the property." *Id.* at App. 35. Plaintiff did not remit the curing payment.

On November 7, 2017, Defendant sent Plaintiff a loan modification offer that Plaintiff needed to accept and make payment on by November 21, 2017. *See* Dkt. No. 14, Ex. A-6 at App. 40-45. Plaintiff asserts that he did not receive the offer until December 27, 2017, after the due date of the first trial payment. *See* Dkt. No. 14, Ex. C-1 at App. 80.

On December 15, 2017, Geneva Financial, LLC transferred and assigned its interest in the Deed of Trust to Defendant. *See* Dkt. No. 14, Ex. E at App. 109. Later that month, Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE"), Defendant's foreclosure counsel, sent Plaintiff a Notice of Acceleration informing Defendant that a date of February 6, 2018, had been set for a Substitute Trustee Sale of the property, should Plaintiff elect not to reinstate the loan by remitting payment. *See* Dkt. No. 14, Ex. B-1 at App. 66-68; Ex. B-2 at App. 72. Plaintiff admitted to having received this notice. *See* Dkt. No. 14, Ex. C-1 at App. 81.

On December 29, 2017, representatives from BDFTE filed a Notice of Substitute Trustee's Sale. *See* Dkt. No. 14, Ex. B-2 at App. 72. Plaintiff has not made any further payments and continues to live on the property. *See* Dkt. No. 14, Ex. C-1 at App. 80-81.

Plaintiff filed suit in filed an Original Petition and Application for Temporary Restraining Order in County Court at Law No. 2 of Dallas County on February 5, 2018.

*See* Dkt. No.1. The state court issued a Temporary Restraining Order preventing the planned foreclosure sale the following day. *See* Dkt. No. 1, Ex. C-5 at App. 14. Defendant PennyMac Loan Services, LLC timely removed the case to this court. *See* Dkt. No.1.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's

response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and footnotes omitted). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th

Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (internal quotation marks and footnote omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

Defendant contends that it is entitled to summary judgment on Plaintiff's claims for violations of the Texas Property Code and the Texas Debt Collection Act ("TDCA"), as well as Plaintiff's breach of contract claim. Defendant also asserts that because Plaintiff's underlying claims fail, Plaintiff is not entitled to declaratory or injunctive relief, attorney's fees, or costs.

The undersigned concludes that Defendant's Motion for Summary Judgement should be granted as to all claims.

## I.     The Court should grant Defendant's Motion for Summary Judgment on Plaintiff's Texas Property Code claims.

Plaintiff makes two claims under the Texas Property Code. He alleges, first, that Defendant lacks the authority to foreclose on the property because it is not a mortgagee, and second, that Defendant failed to provide Plaintiff with a Notice of Default. The Court should grant Defendant's Motion for Summary Judgment as to both

7

claims.

**A.** **Defendant had the authority to initiate foreclosure proceedings on the Property as a mortgagee and a mortgage servicer.**

Plaintiff contends that, under Texas Property Code § 51.0001, Defendant lacked the authority to initiate a foreclosure sale because it was not a mortgagee in the instant transaction. Plaintiff asserts that because the public records do not show that Geneva Financial, LLC assigned the lien to another party and because the Note bears no indorsement or allonge of which Plaintiff is presently aware, Defendant is not a mortgagee or mortgage servicer and did not have the authority to initiate the foreclosure or issue any deed thereafter.

Defendant believes that it had the authority to initiate foreclosure under three capacities. First, it argues that it was the last assignee of record of the Deed of Trust and, as such, a mortgagee authorized to foreclose under the Texas Property Code. Second, it argues that it held the Note. Finally, it avers that was a mortgage servicer under Texas Property Code § 51.0001(3).

On review, the undersigned concludes that no genuine dispute of material fact exists as to whether Defendant had the authority to foreclosure because Defendant qualifies as both a mortgagee and a mortgage servicer under Texas Property Code § 51.0001(4).

The Texas Property Code provides that either a mortgagee or mortgage servicer can administer the foreclosure proceedings on a property. *See* TEX. PROP. CODE §§ 51.002, 51.0025. A mortgagee is defined as "(A) the grantee, beneficiary, owner, or

8

holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). Under Section 51.0001(3), a mortgage servicer is defined as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3).

As to Defendant's status as a mortgagee, on December 17, 2017, Geneva Financial, LLC assigned the Deed of Trust to Defendant. *See* Dkt. No. 14, Ex. E at App. 109. The Substitute Trustee Sale of the Property was set for February 6, 2018. Because Defendant currently holds the security instrument – and did so at the time of the intended sale – it qualifies as a mortgagee under Section § 51.0001(4)(A) and, therefore, would have had the authority to initiate the foreclosure. *See* TEX. PROP. CODE § 51.0001(4).

Defendant is also the mortgage servicer. On December 17, 2015, Defendant mailed Plaintiff two notifications advising him that Geneva Financial, LLC had sold the mortgage loan to Defendant, *see* Dkt. No. 14, Ex. A-2 at App. 13-14, and that, from February 1, 2016, onward, Plaintiff was to make payment to Defendant, *see* Dkt. No. 14, Ex. A-3 at App. 16-21. Plaintiff made monthly payments on the mortgage from February 2016 up to, and including, July 2017. *See* Dkt. No. 14, Ex. A-4 at App. 23-33. Defendant was "the last person to whom [Plaintiff] ha[d] been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). As such, Defendant qualifies as a mortgage servicer.

9

Because Defendant is both the mortgagee and mortgage servicer, it would have had the authority under either capacity to initiate the foreclosure.

Plaintiff, in his response, failed to challenge this point, instead asserting that his claim was made in good faith but based on inaccurate information. *See* Dkt. No. 17. As such, no genuine dispute exists as to any material fact on the question of Defendant's authority to foreclose, and the Court should grant the Defendant's Motion for Summary Judgment as to the issue of Defendant's authority to foreclose on the property under the Texas Property Code § 51.0001.

## B.    Defendant provided Plaintiff with sufficient Notice of Default.

Plaintiff's second Texas Property Code claim rests on two Section 51.002 contentions. Plaintiff first contends, under Section 51.002(d), that Defendant failed to provide Plaintiff notice before issuing a Notice of Acceleration and Substitute Trustee's Sale with the legal capacity, form, and manner that Section 51.002(d) required. Second, Plaintiff asserts that "later notices" failed to comply with Section 51.002(b) because the notices that preceded them were not valid under Section 51.002(d) since Defendant lacked the capacity to initiate foreclosure.

Defendant asserts that it did have the authority to initiate foreclosure and correctly issued a Notice of Default before the Notice of Acceleration and Notice of Sale. Defendant also argues that both claims fail because there is no private right of action for violating Section 51.002.

Under the Texas Property Code, a mortgage servicer must provide a defaulting debtor with Notice of Default via certified mail "and giv[e] the debtor at least 20 days

10

to cure the default before notice of sale can be given." TEX. PROP. CODE § 51.002(d). If the debtor does not cure the default within 20 days, the mortgage servicer must provide notice of sale pursuant to procedures specified in the Texas Property Code "at least 21 days before the date of sale." *Id.* § 51.002(b).

Under Section 51.002(d), the Notice of Default that Defendant issued provided Plaintiff with more than the requisite 20 days to remit payment. It noted that Defendant would "take steps to terminate [Plaintiff's] ownership in the property by a foreclosure proceeding or other action to seize the property" only if Defendant did not receive the payment by October 26, 2017. *See* Dkt. No. 14, Ex. C-1 at App. 35. And, because Plaintiff did not remit a curing payment, Defendant and its representatives filed a Notice of Substitute Trustee Sale on December 28, 2018. *See* Dkt. No. 14, Ex. B-2 at 72. Again, this notice gave Plaintiff more than the requisite 21 day's notice prior to the proposed sale date of February 8, 2018, as Section 51.002(b) requires.

Defendant has met the burden of showing that no genuine dispute of material fact exists and the undersigned recommends that the Court grant Defendant's motion as to this issue.

Moreover, failure to comply with Texas Property Code §§ 51.002(b) and (d) does not provide Plaintiff with a cause of action prior to an actual foreclosure sale. *See Crucci v. Seterus, Inc.*, No. EP-13-CV-317-KC, 2013 WL 6146040, at *3 (W.D. Tex. Nov. 21, 2013). Rather, "because § 51.002(b) and (d) 'set notice requirements based on the date of sale, a plaintiff can only bring a cause of action under either provision if she

alleges that a sale has occurred.'" *Id.* (quoting *Landry v. Wells Fargo Home Mortg., Inc.*, No. EP-13-CV-144-KC, 2013 WL 5278497, at *3 (W.D. Tex. Sept.18, 2013)). Where a Temporary Restraining Order has been issued that prevented Defendant from conducting a foreclosure sale, "Plaintiff . . . fail[s] to allege a § 51.002 claim upon which relief can be granted" unless a subsequent foreclosure sale occurs. *Landry*, 2013 WL 5278497, at *4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Suarez v. Ocwen Loan Servicing, LLC*, No. 5:15-CV-664-DAE, 2015 WL 7076674, at *3 (W.D. Tex. Nov. 12, 2015).

Here, even if Plaintiff did not receive adequate notice under Texas Property Code §§ 51.002(b) and (d), the temporary restraining order that the state court issued prevented Defendant from conducting a foreclosure sale. *See* Dkt. No. 1, Ex. C-5 at App. 14. Since Defendant has shown that no foreclosure occurred – and Plaintiff has failed to refute such a claim – Defendant has met the burden of showing that no genuine dispute exists as to any material fact as to Plaintiff's claims on this issue. *See Lott v. Wells Fargo Bank, N.A.*, No. 3:17-cv-1270-L-BT, 2018 WL 4376413, at *4 (N.D. Tex. Aug. 22, 2018), *rec. accepted*, 2018 WL 4362632 (N.D. Tex. Sept. 13, 2018); *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 932 (N.D. Tex. 2014).

## II.     **The Court should grant Defendant's Motion for Summary Judgment on Defendant's Texas Debt Collection Act claims.**

As to the Texas Debt Collection Act ("TDCA"), Plaintiff asserts three claims that he believes warrant actual and statutory damages, injunctive relive, costs, and attorney's fees under Texas Finance Code § 392.403.

In his pleadings, Plaintiff avers that Defendant violated three sections of the TDCA. Specifically, Plaintiff claims that Defendant violated the (1) Texas Finance Code § 392.301(a)(8) by threatening to take action on the property; (2) Texas Financial Code § 392.303(a)(2) by attempting to collect charges incidental to the loan; and (3) Texas Finance Code §§ 392.304(a)(8) and (19) by making false representations or deceptive means to collect a debt. *See* Dkt. No. 1, Ex. C-2 at 4-6.

To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act. *See* TEX. FIN. CODE §§ 392.001 *et. seq*.

Under Section 392.301(a), in debt collection, "a debt collector may not use threats, coercion, or attempts to coerce that [involves] . . . threatening to take an action prohibited by law. TEX. FIN. CODE § 392.301(a). The United States Court of Appeals for the Fifth Circuit has held that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis in original); *accord Starling v. JPMorgan Chase Bank, N.A.*, No. 3:13-cv-777-M-BN, 2013 WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

### A.    The claims under Texas Finance Code § 392.301(a)(8) fail because no genuine issue of material fact exists as to the authority and manner in which the default notices were issued.

Under his Section 392.301(a)(8) claim, Plaintiff asserts that Defendant violated the TDCA because it threatened to take – and did actually take – actions prohibited under the law because it violated Texas Financial Code § 51.002(d) and (b). Plaintiff cites to the decision in *Biggers v. BAC Home Loans Servicing, LP*, in which the court held that because the deed of trust had been assigned to the defendant only after the defendant had threatened to foreclose, the defendant did not have the legal right to demand foreclosure when it did and its initial actions were therefore prohibited under the law and constituted a valid Texas Financial Code § 392.301(a)(8) claim. *See Biggers*, 767 F. Supp. 2d 725, 733 (N.D. Tex 2011).

As with the Texas Property Code claims, Defendant asserts that it had the authority to issue the notices because it (1) held the Note, (2) was the last assignee of record of the deed and therefore a "mortgagee," and (3) was the mortgage servicer.

Under the Texas Property Code § 51.0025, "[a] mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if: (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement . . . ." TEX. PROP. CODE § 51.0025.

Defendant argues that as in the Fifth Circuit's ruling in *Farkas v. GMAC*

14

*Mortgage, L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013), where the doctrine of quasi-estoppel barred a borrower from challenging a defendant's status as mortgage servicer based on payments borrower made to a defendant over a 14-month period, here, too, Plaintiff is estopped from challenging Defendant's status because Plaintiff also made periodic payments to Defendant between 2016 and the time that he eventually defaulted. As such, Defendant argues, because it had the authority to issue such notices, it did not violate Texas Finance Code § 392.301(a)(8). Moreover, Defendant has shown that it issued the notices in compliance with the Texas Property Code, which requires a mortgage servicer to serve a notice of default by certified mail and provide at least twenty days to cure, prior to accelerating the loan.

Without addressing Defendant's authority to act as mortgage servicer, Plaintiff again returns to *Biggers* to argue a violation of applicable law, asserting that Defendant had no legal capacity to act.

Defendant has met its burden to show there to be no genuine issue of material fact as to a Defendant's alleged violation of Texas Finance Code § 392.301(a)(8).

## B.    No genuine issue exists as to Defendant's alleged violation of Texas Finance Code § 392.303(a)(2).

Under his Section 392.303(a)(2) claim, Plaintiff contends that Defendant violated Texas Financial Code § 392.303(a)(2) for collecting – or attempting to collect – amounts from Plaintiff not expressly authorized under the Note or Deed of Trust when Defendant (1) failed to properly account for and acknowledge payments made through December 2017 and subsequently demanded that Plaintiff pay sums in excess

of those permitted under the Note or Deed of Trust, and (2) threatened to conduct a substitute sale of the property.

Defendant argues that, under the Fifth Circuit's holding in *Williams v. Wells Fargo, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014), Plaintiff's general allegations do not rise to a claim under Section 392.303(a)(2) because they are no more than general assertions of "wrongful charges" and do not specifically identify unauthorized fees or penalties.

The undersigned agrees. No genuine issue of material fact exists as to a violation of Texas Finance Code 392.303(a)(2), which bars a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE §§ 392.303(a)(2) 392.303(a)(2).

The Court of Appeals in *Williams* held that the plaintiff's general assertions of "wrongful charges" were insufficient to state a claim under 392.303(a)(2) because they were conclusory in nature and the plaintiffs failed to allege that the charges they faced were not legally chargeable to them. 560 F. App'x at 240. This standard has been applied by courts in this district. *See Adams v. United States, N.A.,* No. 3:17-cv-723-B-BN, 2018 WL 2164520, at *11 (N.D. Tex. Apr. 18,2018) (holding that plaintiff's failure to show facts that defendant was not authorized to collect such compensation under the Note constituted a failure to state a claim under Section 392.303(a)(2)); *Westinde v. JP Morgan Chase Bank, N.A.*, No. 3:13-cv-3576-O, 2014 WL 4631405, at *8 (N.D. Tex.

16

Sept. 16. 2014) (declaring that conclusory allegations are insufficient to state a claim under Section 392.303(a)(2)); *Bircher v. Bank of New York Mellon*, No. 4:12-cv-171, 2012 WL 3245991, at * 3 (N.D. Tex. Aug. 9, 2012) (finding plaintiff failed to state a plausible allegation of violation of § 392.303(a)(2) where petition contained scant factual specificity regarding any misrepresented amounts).

Plaintiff fails to proffer any evidence as to Defendant's violations, outside of its conclusory assertions that Defendant failed to properly account for and acknowledge payments made through December 2017. Defendant provided the court with evidence of Plaintiff's payments up until August 2017 and referenced to the provisions in the loan that allow it to collect such mortgage insurance premiums, hazard insurance premiums, and county taxes. *See* Dkt. No. 14, Ex. D at App. 93. Plaintiff has not offered any evidence to dispute this showing. Moreover, it has not shown any evidence to support its allegations that Defendant subsequently demanded that Plaintiff pay sums in excess of those permitted under the Note or Deed of Trust.

Because the Plaintiff has failed to point to any evidence to substantiate these conclusory claims, the undersigned finds that no genuine issue of material fact exists as to Defendant's alleged violation of Texas Finance Code 392.303(a)(2).

### C.   No genuine issue exists as to Defendant's alleged violation of Texas Finance Code § 392.304(a)(8) and § 392.304(a)(19).

Under his final TDCA claim, Plaintiff contends that Defendant violated Texas Financial Code §§ 392.303(a)(8) and (19) by making fraudulent representations and employing deceptive acts and practices to misrepresent the status of Plaintiff's debt.

Specifically, Plaintiff avers that Defendant (1) failed to account for and acknowledge payments made through November 2017 and subsequently accelerated the Note, (2) refused payments that Plaintiff tendered, (3) demanded that Plaintiff pay amounts not owed, and finally (4) sent an offer for a trial modification to Plaintiff after the first required payment date under the modification, alleging that such a failure to pay constituted a rejection of the modification.

Defendant contends that Plaintiff failed to provide any evidence that Defendant failed to apply any tendered payment or refused any attempted payments. And Defendant supports its actions by pointing to its authority to collect the mortgage payments, insurance premiums, hazard insurance premiums, and county taxes. As to the trial modification, Defendant proferred evidence that it issued a modification offer to Plaintiff on November 7, 2017, with the first payment being due on December 1, 2017, *see* Dkt. No. 14, Ex. A-6, App. 40-45, and that, regardless of when Plaintiff claims to have received the offer, he never made any further loan payments under the trial modification or on the loan.

Under Section 392.304(a)(8), debt collectors are prohibited from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). And they are barred from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19). To classify as a violation under the TDCA, the debt collector's misrepresentation "must have made an affirmative

statement that was false or misleading." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (internal quotation marks omitted).

> i.    Plaintiff has failed to allege any specific facts to show that Defendant made affirmative statements that were false and misleading in violation of Section 392.304(a)(8).

The Fifth Circuit in *Miller v. BAC Home Loans Servicing, L.P.* held that "because the [plaintiffs] always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted," the defendant did "not misrepresent the character, extent, amount of the [plaintiff's] debt in violation of [Section] 392.304(a)(8)." *Miller,* 726 F.3d at 723.

Here, Defendant has shown that, at all times, as evidenced by the loan statements, Plaintiff was aware (i) that he had a mortgage debt, (ii) of the amount that he owed on the debt, and (iii) that he defaulted – something that he had admitted to on the record. Plaintiff does admit to having received the loan modification on December 27, 2017, almost two months after the November 7, 2017 date on which Defendant alleges it was sent – but Plaintiff fails to show how this would constitute a misrepresentation of the character, extent, or amount of a consumer debt of the loan in violation of Section 392.304(a)(8). *See* Dkt. No. 1, Ex. C-2. App. 5. Plaintiff appears to have remained fully aware of the fact that he had an outstanding debt, that he owed payment on the debt, and that he was in default. Defendant's offer of a loan modification, and Plaintiff's non-response to this offer, do not color Defendant's actions as misrepresentation of the loan. Plaintiff has not shown that there is a genuine issue of material fact as to whether Defendant's actions were in violation of Section 392.304

(a)(8).

> ii.   Plaintiff has failed to allege any specific facts to show that Defendant employed false representations or deceptive means to collect a debt in violation of Section 392.304(a)(8).

Section 392.304 (a)(19) is a catch-all provision that addresses all false representations or deceptive means that a party might employ in collecting a debt. *See Williams*, 560 F. App'x. 233 at 240; *Adams*, 2018 WL 2164520, at *10. As the *Thompson* court held, to pursue a Section 392.304(a)(8) claim, a plaintiff must establish that the debt collector's misrepresentation "made an affirmative statement that was false or misleading." 783 F.3d at 1026 (internal quotation marks omitted).

Here, Plaintiff offers conclusory statements that Defendant (1) failed to acknowledge payments, (2) refused payments that Plaintiff tendered, (3) demanded that Plaintiff pay amounts not owed, and finally (4) sent and later revoked a trial modification offer. The final assertion is the closest claim to an affirmative statement – but, as discussed above as to the alleged Section 393.304(a)(8) violation, no aspect of the trial modification (which Plaintiff ignored and failed to remit payment under) has been shown to be false or misleading.

Plaintiff has not shown that there is a genuine issue of material fact as to whether Defendant's actions were in violation of Section 392.304 (a)(19).

In sum, the Court should grant Defendant's Motion for Summary Judgment as to all of Plaintiff's TDCA claims.

### III.    The Court should grant Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim.

Plaintiff also argues that Defendant (1) breached the Deed of Trust by failing to give notice prior to issuing a notice of acceleration and substitute trustee's sale, without the legal capacity to do so, and (2) failed to provide adequate notice of sale since Defendant lacked the authority to give such notice. Plaintiff argues that this wrongful conduct caused him to incur actual damages by having his possession and enjoyment of the property jeopardized, as well as the financial impact of attorney's fees and costs.

Defendant argues that this breach of contract claim fails because (1) Defendant provided Plaintiff with adequate notice of default prior to issuing a notice of default and had the authority to send foreclosure notices under its status as a mortgagee and mortgage servicer, (2) Plaintiff was in material breach, and (3) Plaintiff failed to show that Defendant's breach caused any damages.

To succeed on a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

While recent Fifth Circuit law invalidates Defendant's material breach argument, the undersigned will review each of Defendant's three arguments.

21

### A. Plaintiff's obligation to make monthly payments on the loan is independent of Defendant's obligations in the event of default.

While there is no genuine issue of material fact that Plaintiff is in material breach of the Deed of Trust, that is not dispositive in a breach of contract against Defendant. In its briefing, Defendant cites to the district courts' decisions in *Brown v. Wells Fargo Bank* and *Owens v. Bank of Am., NA*, holding that, because the plaintiffs had themselves defaulted on their mortgages, they could not establish the second element of a breach of contract claim. But the Fifth Circuit recently ruled in *Williams v. Wells Fargo Bank, N.A.* that

> Texas courts "must . . . attempt to give effect to all contract provisions so that none will be rendered meaningless." If performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning. Such a reading is inconsistent with the intent of the parties and with Texas law.

*Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 245 (5th Cir. 2018) (quoting *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).

Here, Plaintiff alleges that Defendant violated the Deed of Trust by failing to uphold its notice obligations. Plaintiff's own breach is not dispositive of its ability to maintain a claim of breach of contract against Defendant because these notice terms would then be meaningless as they are only ever invoked subsequent to a default. Therefore, under this theory, Defendant is not entitled to summary judgment

### B. Plaintiff has failed to show any genuine issue of material fact as to whether a breach occurred.

Plaintiff's contends that Defendant's violations of Texas Property Code §§

51.002(b) and 51.002(d) constitute a breach of the Deed of Trust.

As discussed above as to Plaintiff's Texas Property Code claims, Defendant proffered evidence that it sent Plaintiff a Notice of Default and Intent to Accelerate via certified mail on September 21, 2017, *see* Dkt. No. 14, Ex. A-5 at App. 33-38, and showed that it qualified as a mortgage servicer at the time that it issued Plaintiff a Notice of Default and Intent to Accelerate, *see* Dkt. No. 14, Ex. A-2 at App. 13-14.

Moreover, the Notice of Default that Defendant issued provided Plaintiff with more than the requisite 20 days to remit payment. *See* Dkt. No. 14, Ex. C-1 at App. 35. And Defendant's Notice of Substitute Trustee Sale on December 28, 2018, *see* Dkt. No. 14, Ex. B-2 at 72, gave Plaintiff more than the requisite 21 day's notice prior to the proposed sale date of February 8, 2018, as required under Section 51.002(b).

In response, Plaintiff fails to challenge any of these facts or proffer any evidence to the contrary to qualify Defendant's actions as a breach. Instead, Plaintiffs stakes his claim on the conclusory statements that Defendants breached the Deed of Trust because he violated the Texas Property Code §§ 51.002(b), 51.002(d), and 510025(2).

That is unavailing. Here, as in *Ashton v. BAC Home Loans Servicing, L.P.*, Plaintiff not only failed to point to the operative provision in the Deed of Trust that Defendant breached, but "Plaintiff [also] failed to allege a plausible breach of contract theory. As discussed above, Defendant did not, as a matter of law, breach the contract by failing to comply with the notice requirements of [S]ection 51.002 of the Texas Property Code." No. 4:13-cv-810, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013). The failure to comply with Texas Property Code §§ 51.002(b) and (d) does not provide

Plaintiff with a cause of action prior to an actual foreclosure sale – which did not happen here. *See Crucci v. Seterus, Inc.*, No. EP-13-CV-317-KC, 2013 WL 6146040, at *3 (W.D. Tex. Nov.21, 2013).

### C. If a breach did occur, Plaintiff has failed to show any genuine issue of material fact as to whether the breach caused any damages.

Plaintiff contends that he had "incurred actual damages by having title to, and possession, use and enjoyment of the Property jeopardized." *See* Dkt. No. 1, Ex. C-2, App. 7. And Plaintiffs maintains that he incurred "filing fees and reasonable and necessary attorney fees." *Id.*

But, where no foreclosure took place, these damages are at most a threat of damages as opposed to actual damages that would satisfy the damages element of a breach of claim contract. *See De La Mora v. CitiMortgage, Inc.*, No. 7:17-cv-468, 2015 WL 12803712, at *2 (S.D. Tex. Jan. 26, 2015) ("Plaintiff cannot show damages resulting from any such breach because no foreclosure sale has occurred.").

And, although a plaintiff may be awarded filing and attorney's fees under Texas Civil Practice and Remedies Code §§ 37.009 and 38.001(8), these remedies do not constitute actual damages that satisfy the elements under a breach of contract claim. TEX. CIV. PRAC. & REM. CODE §§ 37.009, 38.001(8); *see Vianet Grp. PLC v. Tap Acquisition*, No. 3:14-cv-3601-B, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) (reasoning that the Texas Supreme Court would not characterize attorney's fees as damages "if they were subsequently incurred prosecuting a breach of contract claim").

Plaintiff is near-silent on this issue in asserting that any genuine issue of material fact exists as to Plaintiff's breach of contract claim. Instead, he, again, invokes *Biggers* and conclusory Texas Property Code claims.

Defendant has met its burden to show it is entitled to summary judgment on Plaintiff's breach of contract claims.

## IV.   The Court should deny Plaintiff's request for equitable relief, declaratory judgment, costs, and attorneys' fees.

Plaintiff seeks a restraining order and a temporary injunction under the Court's equitable power and Texas Finance Code § 392.403(a)(1). Plaintiff seeks relief (1) to bar any transfer of interest in the Property or any forcible detainer, (2) to stay any proceeding in another court seeking to foreclose the Property, and (3) to prevent any further violations under the TDCA. Because the Court should grant Defendant's Motion for Summary Judgment on all of Plaintiff's substantive claims, Plaintiff's requests for declaratory and injunctive relief should not survive. Declaratory judgment and injunctive relief are forms of relief based on underlying claims. *See Collin Cnty., Tex. v. Homeowners Ass's for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990) (declaratory judgment); *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-cv-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (injunctive relief); *Johnson*, 999 F. Supp. 2d at 935.

## Recommendation

For the reasons explained above, the Court should grant Defendant's Motion for Summary Judgment [Dkt. No. 12] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 22, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE